# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RORRER, et al. | : CIVIL ACTION |
| Plaintiffs, | : |
| v. | : No. 08-0671 |
| CLEVELAND STEEL CONTAINER CORP., et al. | : |
| Defendants. | : |

## MEMORANDUM OPINION

**Goldberg, J.**                                                                                           September 20, 2010

Given the unnecessarily combative and overly contentious relationship between counsel throughout the course of this case, it is no surprise that the current issue before the Court pertains to Defendant's submission for attorney's fees stemming from our finding at trial that Plaintiff's counsel had engaged in sanctionable discovery violations.[1] The facts leading to these sanctions are as follows:

A central issue in this case involved the extent of Plaintiff's mental damages which she alleged were suffered as a result of Defendant's discriminatory conduct. Plaintiff's position was that she was completely incapacitated, and suffered from post-traumatic stress disorder. Defendant acknowledged that Plaintiff was suffering from an array of psychological problems but posited that none were related to its conduct. Both parties hired experts on this issue.

---

[1] Plaintiff was represented at trial by Martha Sperling, Esq. and Ralph Lamar, Esq. Sanctions were only imposed against Plaintiff's counsel Martha Sperling as the record does not reflect that Mr. Lamar was a party to the sanctionable actions.

1

After extensions were granted, the final discovery scheduling order required that Plaintiff's expert report be produced no later than July 31, 2009, and any rebuttal expert report be transmitted no later than September 4, 2009. All expert discovery was to be completed by September 25, 2009.

During the course of discovery, Plaintiff identified Dr. Robert Toborowsky as her expert forensic psychiatrist to testify about her mental condition. Toborowsky met with Plaintiff on December 22, 2008 to conduct an independent medical evaluation ("IME"). Plaintiff subsequently produced Toborowsky's reports on January 22, 2009, March 26, 2009 and August 31, 2009, all within the discovery deadline.

The sequence of events that followed, which resulted in the Court's June 21, 2010 sanction Order, are mostly undisputed. Jury selection commenced on June 11, 2010, and was completed that same day. Sometime during the jury selection process, Plaintiff's counsel, Martha Sperling, approached Defense counsel, Mary Kohart, and her co-counsel, Kathryn Deal, and advised that Dr. Toborowsky desired to meet with and re-examine Plaintiff prior to his upcoming trial testimony. Ms. Sperling asked Defense counsel whether they objected to this re-examination. Not surprisingly, Defense counsel responded that they "absolutely" objected. Indeed, this re-examination would have been entirely impermissible for a variety of reasons, including: 1) Discovery was closed, and thus, the defense would be unable to obtain a report or deposition regarding the results of this re-examination; and 2) Defendant's mental health expert would not be provided with the results of this re-examination nor provided the same opportunity for a follow-up re-examination of Plaintiff. Despite Defense counsel's clear and unequivocal objections, Ms. Sperling never disclosed that an appointment with Dr. Toborowsky was already scheduled and that she had every intention of ensuring that this re-examination was completed. (Trial Tr., 6/17/20, pp. 106-107, 134-35.)

2

Testimony was scheduled to begin on Tuesday, June 15, 2010. On Monday, June 14, 2010, Ms. Sperling called Defense counsel to advise that Plaintiff had a doctor's appointment on the following day and therefore would not be the first witness to testify as previously indicated. Again, Ms. Sperling failed to advise Defense counsel that Dr. Toborowsky had already re-examined Plaintiff. Upon learning that Plaintiff had a doctor's appointment, Defense counsel immediately forwarded correspondence to Sperling stating, "out of an abundance of caution, we simply want to reiterate our objections to Plaintiff seeing or consulting with Dr. Toborowsky before his trial testimony." Ms. Sperling did not respond to the letter and remained silent about the re-examination, compounding her initial deception. (Tr. Trans. 6/17/2010, pp. 106, 118, 132; Correspondence of Kathryn Deal to Martha Sperling, 6/15/2010.)

As noted above, despite Defense counsel's continuing clear and unequivocal objection to a re-examination outside of the discovery deadline, Plaintiff had indeed been re-examined by Dr. Toborowsky on June 11, 2010. This information only came to light during Dr. Toborowsky's cross-examination on June 17, 2010, when he was asked about the total length of time he had spent with Plaintiff. Dr. Toborowsky explained that this re-examination was necessary "because after all this time that had gone by, I was interested in how she was doing, and <u>as another source of information about her</u>." (emphasis added). Dr. Toborowsky acknowledged that he met with Plaintiff for about forty-five minutes on Monday, June 11, 2009, where he went through his report and the history he had taken a year-and-a-half prior to see where Plaintiff "stood on those issues." Dr. Toborowsky also met with and interviewed Plaintiff's husband to inquire about Plaintiff's mental state. He testified that the meetings "tended to reinforce opinions that I had independently arrived at before." Notes were taken during the meeting, which Dr. Toborowsky described as "scribbles." Despite

3

having received a subpoena requiring him to preserve and bring his entire file to court, Dr. Toborowsky testified that these notes were destroyed. (Trial Tr., 6/17/10, pp. 94-104, 136-44, 242-44.)

Out of the presence of the jury, Ms. Sperling was asked to explain why she never disclosed the re-examination to Defense counsel:

> THE COURT: Did you tell defense counsel that your expert had another meeting, which he's now saying reinforces his opinions? Did you tell them that?
>
> MS. SPERLING: Yes.

Upon further inquiry, Ms. Sperling seemed to change course:

> THE COURT: Wait. I want to understand. You called her said that he wanted to meet with her again, and Mrs. Kohart said, no, I object. And then, he went ahead and did it anyway, obviously, because he's testified to that. Did you advise Ms. Kohart that he did it over her objection – that he did it over her objection?
>
> MS. SPERLING: No, I did not.

Later, Ms. Sperling explained:

> MS. SPERLING: I indicated that I didn't care about [Ms. Kohart's] objection, but I don't know how - - if I said that, or I did that through body language, or exactly how that was communicated. But it's my recollection that it was communicated.

(Id. at 95, 96, 132.)

While Ms. Sperling's explanations are somewhat vague as to whether the pending re-examination was disclosed, we reject now, as we did at trial, any suggestion that the re-examination was communicated to Defense counsel. During the course of this litigation, both counsel were unable to resolve even the smallest of disputes amongst themselves and brought an unending array of issues

4

to the Court. Thus, there is no doubt that had Ms. Sperling told Defense counsel of the pending re-examination, that issue would have immediately been brought to the Court's attention. In short, it is clear that Ms. Sperling deliberately withheld information about the pending re-examination without any regard for discovery deadlines, or concern for Defense counsel's right to know this information, or, more importantly, Defendant's right to bring this dispute to the Court's attention.

Defendant subsequently filed a "Motion to Strike the Testimony of Dr. Toborowsky." After careful consideration of that motion, Plaintiff's response, and the parties' oral arguments, including counsels' respective descriptions and explanations, we denied that motion but ruled that "plaintiffs are sanctioned for flagrant and bad faith willful violation of the discovery rules, and general [un]fairness - - in the way they conducted themselves in this matter." (Trial Tr. 6/21/10, p. 6.) In this Court's subsequent written Order we reiterated that, "discovery sanctions against Plaintiff's counsel, Martha Sperling, have been imposed and a final Order on this issue will be issued upon receipt of information from Defense counsel regarding costs and Plaintiff's response." (Order, 6/24/10, doc. no. 209.)

Defense counsel for Cleveland Steel has now submitted for the Court's consideration the attorneys' fees incurred because of the expert discovery violation in the amount of $2700.00 (doc. no. 228).

Federal Rule of Civil Procedure 16(f), which authorizes sanctions for violations of pretrial orders issued pursuant to Rule 16, provides:

> (1) In General. On a motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(iii), if a party or its attorney:
> . . .
> (c) fails to obey a scheduling or other pretrial order.

5

> (2) Imposing Fees and Costs. Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses - - including attorney's fees - - incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 16(f)(1)(c), 16(f)(2).

The United States Court of Appeals for the Third Circuit has held that "monetary sanctions for noncompliance with Rule 16 pretrial orders are required and appropriate absent a showing that the violation was 'substantially justified' or the award of expenses is 'unjust' under the circumstances of the case." Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 241 (3d Cir. 2007). Substantial justification exists where there is a "genuine dispute concerning compliance." Id. (quoting Fitz, Inc. v. Ralph Wilson Plastics Co., 174 F.R.D. 587, 591 (D.N.J. 1997)). To determine whether sanctions are "unjust," a court considers "the degree of the sanction in light of the severity of the transgression which brought about the failure to comply." Tracinda Corp., 502 F.3d at 241.

Plaintiff's counsel urges that sanctions are unwarranted. In doing so, Ms. Sperling does not dispute the factual scenario described above or that she violated this Court's discovery orders. Rather, she points a finger at Defense counsel and alleges that they engaged in similar conduct regarding their own expert psychiatrist, Dr. Annie Steinberg. In doing so, Ms. Sperling relies upon precedent holding that, "[i]t is well settled that '[o]ne who comes into equity must come with clean hands and keep those hands clean throughout the pendency of the litigation.'" Goldstein v. Lincoln National Convertible Securities Fund, 140 F.Supp.2d 424, 441 (E.D.Pa. 2001) (citing Gaudiosi v. Mellon, 269 F.2d 873, 881 (3d Cir. 1959)). Specifically, she asserts that during Dr. Steinberg's trial testimony, Steinberg acknowledged that she reviewed certain medical records from the Penn

6

Foundation subsequent to issuing her initial report, and had not prepared a supplemental report to reflect this fact. (Pl.'s Memo. p. 2 (citing Trial Tr., 6/22/10, pp. 62-63)).

For a variety of reasons, Defense counsel's alleged discovery violation could not be more different than the scenario currently under consideration. First, the Penn Foundation records at issue had been received by Plaintiff's counsel well in advance of Dr. Steinberg's trial testimony and were moved into evidence by Defendant without objection by Ms. Sperling. (Trial Tr., 6/16/10, p. 204.) Second, Steinberg did not reference these records as a basis for her opinion, but rather noted these records in conjunction with Plaintiff's continuing use of prescription drugs. Finally, this Court sustained Ms. Sperling's objections and disallowed any further testimony regarding these documents. **(**Trial Tr., 6/22/10, pp. 62-63). To suggest that these facts are somehow comparable to the willful failure to disclose a re-examination of the Plaintiff, occurring nine months after the discovery deadline and on the day of jury selection, is disingenuous.

Sanctions are plainly warranted against Plaintiff's counsel under Rule 16(f) due to her blatant violation of the Court's April 27, 2009 Scheduling Order which set forth the expert discovery deadlines. Not only was Plaintiff's counsel obligated to disclose the follow-up examination, Defense counsel should have been entitled to some form of discovery regarding the exam, be it by way of expert report or deposition. Plaintiff's counsel's explanation for her non-compliance was premised on the fact "that his opinion was exactly the same," and therefore she urges that she was not obligated to provide a supplemental report or even notify Defense counsel that the meeting ever happened. (Tr. Trans. 6/17/10, pp. 111-13.) We reject this explanation because Plaintiff's counsel never afforded Defense counsel the opportunity to even consider what had occurred or place it before the Court for consideration. The fact that Toborowsky needed and requested a follow-up examination because so

7

much time had passed since he examined Plaintiff, is in fact discoverable and could have served as valuable cross-examination. Dr. Toborowsky's forty-five minute examination, and the taking and destroying of notes are also clearly discoverable information that should have been produced.

Under no circumstances can Plaintiff's counsel establish that the noncompliance was "substantially justified." This Court's Scheduling Order directed that expert discovery be closed as of September 25, 2009 and the re-examination took place on June 11, 2010. Therefore, there can be no "genuine dispute" about whether Plaintiff's counsel complied with this Court's Order.

Further, there is no possibility that Plaintiff's counsel permitted her client to attend the re-examination mistakenly. Ms. Sperling advised the Court: "I knew, when I went to tell Mrs. Kohart, that the meeting was going to take place, that she did not want the meeting to take place, and that she objected to it. I did know that." (Tr. Trans 6/17/10, p. 109.)

We also find that, considering the severity of Plaintiff's counsel's behavior, which illustrated a blatant disrespect for the judicial process and common courtesy to her opposing counsel, the sanction of $2700 in attorney's fees is warranted.[2]

---

[2] Defendant's counsel submits that it spent nine hours on the issue of Dr. Toborowsky meeting with Plaintiff on the day of jury selection. The submitted time includes: Ms. Kohart's conversation with Ms. Sperling in which she objected to the meeting with Dr. Toborowsky; the correspondence sent to Ms. Sperling, again objecting to any meeting; Ms. Deal's cross examination of Dr. Toborowsky about the meeting; the research for, drafting of, and oral argument on the "Motion to Strike the Testimony of Dr. Toborowsky"; and the preparation of the document currently before the Court - "Defendant's Attorney's Fees Incurred Because of Plaintiff's Counsel's Expert Discovery Violations Regards Dr. Toborowsky." According to Defendant, "Drinker Biddle & Reath LLP charged Cleveland Steel's insurer a special negotiated rate of $300 per hour for each of the attorneys working on the above-captioned action. To the extent the normal, A-rates for each of those attorneys should apply, they are as follows: Mary Kohart, $525.00/per hour; Kathryn Deal, $375.00/per hour; Richard Haggerty, $275.00/per hour." Because we find that the $300/hour rate is applicable and nine hours of work a reasonable amount of time, considering the seriousness of the violation, we find $2700 to be a reasonable amount.

Finally, we note that**:**

> [The] Supreme Court . . . [has] stat[ed] that the 'inherent power' to sanction an attorney was 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' If a court's inherent powers include the ability to do whatever is reasonably necessary to deter abuse of the judicial process, . . . courts must be able to impose reasonable sanctions for conduct by lawyers that falls short of contempt of court.

In re Cendant Corp., 260 F.3d 183, 199 (3d Cir. 2001) (quoting Eash v. Riggins Trucking Inc., 757 F.2d 557, 567 (3d Cir. 1985) (citations omitted). Thus, even if there was no rule discovery violation, we would have nonetheless sanctioned Ms. Sperling under our inherent authority to manage cases before us.

Our Order follows.